*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRAIG SCHUBINER,

       Plaintiff-Appellant,

V

CAN IV PACKARD SQUARE, LLC,

       Defendant-Appellee.

FOR PUBLICATION
July 17, 2026
2:33 PM

No. 371134
Oakland Circuit Court
LC No. 2023-200199-CB

CAN IV PACKARD SQUARE, LLC,

       Plaintiff-Appellee,

V

CRAIG SCHUBINER,

       Defendant-Appellant,

and

BCL PROPERTIES LIMITED PARTNERSHIP,

       Intervenor,

and

305 ASSOCIATES, LLC,

       Intervenor-Appellant.

No. 377133
Oakland Circuit Court
LC No. 2018-167408-CB

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

YOUNG, J.

-1-

These consolidated appeals[1] are the latest chapter in the lengthy litigation between Craig Schubiner and Can IV Packard Square LLC (Can IV). In Docket No. 371134, Schubiner appeals as of right the trial court's February 26, 2024 order that granted summary disposition in favor of Can IV on Schubiner's claim for relief from judgment pursuant to MCR 2.612(C)(3). In Docket No. 377133, Schubiner and 305 Associates, LLC (305), appeal as of right the trial court's March 14, 2025 order, which (1) found that Schubiner had engaged in a fraudulent transfer of real estate and (2) voided the transfer. In both docket numbers, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In *Can IV Packard Square, LLC v Schubiner*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2021 (Docket Nos. 352510, 354185, 354821, and 354186) (*Schubiner I*), pp 2-6, this Court summarized the lengthy history between these parties as follows:

> This case arises out of a nearly $54 million loan that [Can IV] made to [Schubiner's] company, Packard Square, LLC ("Packard Square"), in October 2014 to finance the construction of a luxury retail and residential development project in Ann Arbor, Michigan. As Packard Square's principal, [Schubiner] signed a guaranty contract as security for the construction loan. After multiple construction delays, [Can IV] sued Packard Square in Washtenaw Circuit Court in October 2016 ("the Washtenaw action" or "the Washtenaw case"); [Can IV] requested the appointment of a receiver to manage the construction project and sought foreclosure on the mortgage that Packard Square had granted to [Can IV] to secure the loan.
>
> At the outset of the Washtenaw action, the trial court granted [Can IV's] request for the appointment of a receiver, and this Court affirmed the appointment of the receiver. Following the issuance of this Court's opinion affirming the Washtenaw Circuit Court's order appointing the receiver, Packard Square applied for leave to appeal in our Supreme Court, which denied the application for leave to appeal.
>
> Meanwhile, during its appeal of the receivership order, Packard Square filed for bankruptcy. The bankruptcy court dismissed the bankruptcy case and noted that "[a] dismissal will avoid any needless confusion or doubt about the ability of the Receiver and the state court in the receivership case to carry on, as if no bankruptcy had been filed." In affirming the bankruptcy court's dismissal of the bankruptcy petition, the United States District Court for the Eastern District of Michigan stated that "the [Washtenaw Circuit Court] found, and the Michigan Court of Appeals affirmed those findings, that [Packard Square] had mismanaged the Project in several different ways, leading to delays and missed milestones."
>
> After the appointment of the receiver, the Washtenaw case proceeded with discovery. [Can IV] eventually moved for summary disposition on its foreclosure

---

[1] *Schubiner v Can IV Packard Square LLC*, unpublished order of the Court of Appeals, entered December 30, 2025 (Dockets Nos. 371134 and 377133).

-2-

claim, seeking foreclosure both on Packard Square's mortgage and on a higher priority mortgage securing an additional loan that [Can IV] had made to the receiver to complete construction. In September 2018, the trial court granted summary disposition to [Can IV] on its foreclosure claim and "entered a judgment of foreclosure authorizing the sale of the property at a sheriff's sale." The property was sold to [Can IV] for a $75 million credit bid at the November 15, 2018 foreclosure sale, and Packard Square filed an appeal from the judgment of foreclosure. This Court dismissed Packard Square's appeal as moot after Packard Square failed to redeem the property within the redemption period as provided in MCL 600.3140. Following the issuance of this Court's opinion dismissing the appeal, Packard Square applied for leave to appeal in our Supreme Court, which denied the application for leave to appeal.

On February 15, 2019, the Washtenaw Circuit Court entered an order granting summary disposition to [Can IV] regarding counterclaims that Packard Square had asserted against [Can IV] in the Washtenaw case. . . .

On July 30, 2018, [Can IV] filed [an] action against [Schubiner] for breach of the guaranty contract. [Can IV] alleged that, under the terms of the guaranty contract, [Schubiner] had agreed to be liable for the full amount of [Can IV's] loan to Packard Square upon the occurrence of certain recourse triggers. Among those recourse triggers were the filing by Packard Square or [Schubiner] of a voluntary bankruptcy proceeding and opposition by Packard Square or [Schubiner] to a motion of [Can IV] for relief from the automatic bankruptcy stay. [Can IV] asserted that, through bankruptcy filings made by [Schubiner] on behalf of Packard Square, [Schubiner] breached the guaranty contract and triggered the recourse provisions of the guaranty contract. Those actions made [Schubiner] liable to [Can IV] for the full amount of the loan, including all principal, interest, advances, fees, and charges.

On December 17, 2018, [Schubiner] filed an answer denying liability and asserted affirmative defenses and counterclaims. . . .

The parties filed competing motions for summary disposition pursuant to MCR 2.116(C)(10) regarding both [Can IV's] breach of contract claim and [Schubiner's] counterclaims. On December 11, 2019, the trial court issued an opinion and order granting summary disposition to [Can IV] on both its breach of contract claim and [Schubiner's] counterclaims. On December 17, 2019, the trial court entered a judgment for [Can IV] and against [Schubiner] in the amount of $13,992,936.05, along with attorney fees, consultant fees, continuing interest, and costs.

Extensive postjudgment litigation ensued regarding [Can IV's] collection efforts against [Schubiner] and entities associated with [Schubiner]. On January 16, 2020, the trial court entered an order enjoining [Schubiner] from transferring assets outside of the normal course of business pending the satisfaction of the judgment.

On March 6, 2020, proposed intervenors, BCL [Properties Limited Partnership] and 305, filed trial court motions to intervene, quash garnishments, set aside judgment liens, and vacate orders to seize property. According to proposed intervenors, [Can IV] had improperly attempted to execute the December 17, 2019 judgment in this case against multiple properties that are each owned by either BCL or 305 which are located in Birmingham, Michigan, or Ann Arbor, Michigan. 305 was owned by a number of trusts of which [Schubiner] and members of his family were beneficiaries. BCL was owned by [Schubiner] as a general partner and a limited partner named Richard Rogel. Proposed intervenors sought to intervene in order to protect their ownership interests in the properties and to prevent [Can IV] from undertaking collection efforts against the properties owned by proposed intervenors. [Schubiner] filed a concurrence in proposed intervenors' motion.

. . . . With respect to each of the properties at issue, [Schubiner] had historically transferred the property in and out of his name. By way of example, [Schubiner] held the two properties located in Birmingham, 201 Linden and 200 Aspen, in his name up until January 20, 2020, but transferred them to 305, of which [Schubiner] was a member, the resident agent, and manager, for the consideration of $1. . . .

* * *

On June 15, 2020, [Can IV] filed a motion for proceedings supplementary to judgment. [Can IV] argued that [Schubiner's] transfer of the Aspen property to 305 on January 20, 2020, was fraudulent, a violation of the January 16, 2020 order enjoining the transfer of [Schubiner's] assets, and a voidable transaction under the Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq*. As a consequence, [Can IV] asked that the trial court enter an order to void the fraudulent transfer. . . .

* * *

On June 19, 2020, [Schubiner] and 305 filed a joint response to [Can IV's] motion for proceedings supplementary to judgment. They argued that [Can IV's] motion was an attempt to circumvent the stay on collection proceedings that was in effect pending the evidentiary hearing ordered by the trial court. [Schubiner] argued he did not violate the order enjoining transfers because the property that was refinanced was owned by 305 and the transactions were part of the ordinary course of refinancing the property. He asserted that the Aspen property was nominally put in his name for only one business day in January 2020 in order to effectuate the routine refinancing. [Citations omitted.]

The trial court granted the motion for supplemental proceeding, but this Court remanded for further proceedings because the court did not make the required findings of fact to support its decision. *Schubiner I*, unpub op at 15-16.

-4-

**Hearing following remand**

On remand, the trial court held an evidentiary hearing on whether Schubiner fraudulently conveyed the Birmingham properties to 305. This Court in *Can IV Packard Square LLC v Schubiner*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2024 (Docket No. 365820) (*Schubiner II*), pp 5-6, summarized the proceedings after the *Schubiner I* remand:

> [Schubiner] testified that he is the manager of 305, and that the owners of 305 are three irrevocable trusts. The beneficiaries of the trusts are [Schubiner], his mother, his daughter, his two brothers, and his brother's two children. [Schubiner] estimated that the Aspen home is valued at two million dollars. He testified that 305 did not pay him for the property, and acknowledged that he previously testified that one of the reasons he created 305 was to keep the assets from creditors, although there were no creditors at the time of 305's creation.
>
> [Schubiner] testified that in 2019, he determined that he needed to refinance both properties on behalf of 305 to obtain a better interest rate. He testified that because all prospective lenders required the property to be owned by him rather than the LLC, he deeded the properties from 305 to himself to obtain financing, and thereafter deeded the property back to 305. Specifically, on January 16, 2020, [Schubiner] executed a quitclaim deed conveying both the Aspen and Linden properties from 305 to himself. On the same day, [Schubiner] executed a mortgage on the Aspen home for $1.5 million, signing the mortgage note in his own name. The $1.5 million was used to pay existing debt on the Aspen and Linden properties; the proceeds of the loan were distributed at the closing to pay off the existing $1,088,000 loan on the Aspen house and pay off the existing $404,000 loan on the Linden property. 305 paid the closing costs of $17,851.16. [Schubiner] testified that he received no proceeds from the refinancing. On January 20, 2020, [Schubiner] executed a quitclaim deed on both properties from himself back to 305.
>
> With respect to his assets, [Schubiner] testified that on January 20, 2020, he owned a 92% interest in an LLC called 1900 Associates that provides him with approximately $4 million in equity, a 50% interest in the Ann Arbor property worth approximately $300,000-$400,000, and an interest in an LLC in Colorado worth approximately $300,000. [Schubiner] testified that he used none of his assets to acquire either of the properties on January 16, 2020 or when he transferred the properties back to 305 on January 20, 2020, and that the transactions had no impact on his net worth.
>
> [Schubiner] testified that his total personal debt in January 2020 was approximately $600,000. He acknowledged that he incurred debt of $1.5 million to refinance the previous debt on the Aspen and Linden properties in January 2020. He also acknowledged that as a result of the transaction, he personally owes the lender $1.5 million and 305 enjoyed the benefit of him paying off the loans previously existing on the properties. [Schubiner] testified that he was also

-5-

responsible for the prior loans on the properties, however, as he signed the loans as a guarantor. He did not assign the current note owed to 305.

Following the evidentiary hearing, the trial court issued its order and opinion denying [Can IV's] motion for proceedings supplementary to judgment. The trial court determined that [Can IV] failed to demonstrate that it was entitled under the UVTA to set aside [Schubiner's] transfer of the properties to 305. The trial court found that [Schubiner] made the transfers solely to obtain favorable interest rates on existing loans in the ordinary course of business, and that [Can IV] did not demonstrate that [Schubiner] was insolvent or became insolvent as a result of the transfers, nor that [Schubiner] did not receive reasonably equivalent value in exchange for the transfer.

**Can IV appeals the result of the evidentiary hearing**

In *Schubiner II*, Can IV appealed the trial court's decision to deny its motion for proceedings supplementary to judgment. This Court vacated the trial court's order and ruled that the trial court failed to apply the proper analysis when determining whether Can IV proved that Schubiner was insolvent or became insolvent as a result of the transfer.[2] This Court concluded that the trial court failed to fully consider the debt Schubiner took on as a result of the transactions without receiving anything in return. *Id*. at 10-12. Specifically, this Court took exception to the trial court's finding that Schubiner's net worth was unchanged before and after the refinancings. Although the trial court referred to Schubiner taking on an addition $1.5 million after the refinancing, it did not consider that debt in its net-worth calculations. *Id*. at 10-11. This Court also ruled that the trial court should have considered whether the $14 million judgment against Schubiner was part of his debt. *Id*. at 11. Finally, this Court concluded that the trial court erred when evaluating whether Schubiner received reasonably equivalent value in exchange for the transfer, and it remanded for further proceedings. *Id*. at 11-12. The basis for this Court's concern for this third element was that "as a result of the transactions, the obligation to pay the $1.5 million shifted from 305 to [Schubiner] with [Schubiner] receiving no equivalent value in exchange for [Schubiner] acquiring this obligation." *Id*. at 11.

**After second remand, trial court finds Schubiner did not receive equivalent value and therefore engaged in a fraudulent transfer**

On remand, Schubiner, while relying solely on MRE 201, moved to expand the record, to include, among other things, promissory notes that purportedly show him as personally responsible for the debts both before and after the refinancing. The trial court denied the motion, ruling that Schubiner failed to show why the court should take judicial notice of this evidence when the proffered evidence was available to be presented at the earlier evidentiary hearing. The court

---

[2] The elements for proving constructive fraud under the UVTA include the following: "(1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive 'reasonably equivalent value in exchange for the transfer. . . .' " *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014), quoting MCL 566.35(1).

further ruled that the proffered evidence clearly were not adjudicative *facts* admissible under MRE 201; they were *documents*, making MRE 201 inapplicable.

At a subsequent status conference, the parties agreed that no additional evidence was necessary and expressly waived any request for an evidentiary hearing. After receiving supplemental briefings from the parties,[3] the trial court found that Schubiner had engaged in a fraudulent transfer. The trial court made the following findings:

> (1) [Schubiner] was insolvent at the time of the transfer under the UVTA. This is so because [his] liabilities grossly exceeded his net worth because of owed $600,000 to creditors at the time of the transfers, [his] debt increased by $1.5 million following the transfers, and [Can IV's] $14 million judgment against [Schubiner], which constitutes a debt under the MUVTA.

> (2) The refinancing affected [Schubiner's] net worth in light of $1.5 million in debt being shifted from 305 to [Schubiner].

> (3) [Schubiner] did not receive "reasonably equivalent value in exchange for the transfer" because the obligation to pay $1.5 million shifted from 305 to [Schubiner] with [Schubiner] receiving no equivalent value in exchange for [Schubiner] acquiring this obligation because he took on debt and received nothing in return.

The court consequently voided the deed transferring the property from Schubiner to 305.

**Schubiner Moves for Reconsideration**

Schubiner and 305 moved for reconsideration, arguing that the evidence left no dispute that Schubiner was personally liable for the debts *both* before and after the January 2020 refinancing. Schubiner averred that his testimony at the evidentiary hearing characterizing his obligation before the refinancing as a "guarantor" is immaterial because the documentary evidence, including the promissory notes he attached to his brief, show that he was personally liable on all promissory notes both before and after the January 2020 refinancing. Schubiner also averred that this Court made a mistake in *Schubiner II*, unpub op at 11, when it stated that "the obligation to pay the $1.5 million shifted from 305 to [Schubiner]." Can IV filed a response, noting that Schubiner's entire argument relied on consideration of nonrecord exhibits and a determination that this Court erred.[4] Moreover, Can IV maintained that even if the improperly submitted evidence was considered, the record evidence still contradicts Schubiner's position. The trial court denied the motion because

---

[3] Despite agreeing that no additional evidence was necessary for the trial court to consider, Schubiner attached many exhibits to his brief that were not part of the March 2023 evidentiary hearing record. Although the trial court did not address these additional exhibits in its order voiding the property transfers, in its order addressing Schubiner's motion for reconsideration, it stated that it did not consider any exhibits that were not admitted at the evidentiary hearing.

[4] While responses generally are not permitted to motions for reconsideration, MCR 2.119(F)(2), the trial court exercised its discretion and accepted the response.

the motion (1) failed to demonstrate palpable error by which the court and the parties were misled, (2) failed to show that a different disposition must result from the correction of any error, (3) raised misplaced arguments about the decision in *Schubiner II*, and/or (4) relied on exhibits that were not properly before the court.

While Can IV was seeking to enforce its judgment against the Birmingham properties, Can IV also initiated a series of collection actions in New York, Colorado, and Delaware. Schubiner moved in the trial court for enforcement of MCR 2.621(G), arguing that under that court rule, Can IV was precluded from initiating those actions without the requisite leave of the trial court. The trial court denied the motion, ruling that the court rule is a rule for subsequent supplemental proceedings in Michigan, not other states. The court also questioned whether, if such a rule were to apply to proceedings in other states, it would pass constitutional muster.

**Schubiner's Action for Relief from Judgment**

On May 4, 2023, Schubiner filed a complaint for relief from judgment pursuant to MCR 2.612(C)(3). Specifically, Schubiner sought relief from the $14 million guaranty judgment. The basis for his claim was that the later receiver loan should not have been given priority over the initial development loan and that the amount of the development loan deficiency was incorrectly calculated.

Can IV moved for summary disposition of Schubiner's claims under MCR 2.116(C)(7) and (8). Can IV argued that it was entitled to summary disposition under MCR 2.116(C)(8) because (1) an independent action under MCR 2.612(C)(3) is improper when Schubiner could have proceeded by motion under MCR 2.612(C)(1), (2) even if allowed, Schubiner cannot show that there is a valid defense to the alleged cause of action on which the judgment was founded, and (3) an independent action under MCR 2.612(C)(3) cannot be maintained on the basis of intrinsic fraud, which is what Schubiner was attempting to accomplish. With respect to MCR 2.116(C)(7), Can IV argued, in relevant part, that Schubiner's claims were barred by res judicata or collateral estoppel.

In response, Schubiner argued that the complaint was sufficient to survive Can IV's (C)(8) challenge because the complaint adequately puts Can IV on notice of the nature of the claims and that if additional detail is required, he should be granted leave to amend the complaint.[5] Schubiner also argued that Can IV's position that his claims were premised on intrinsic fraud is not accurate because he disavowed alleging any fraud. Schubiner also argued that summary disposition was not warranted under MCR 2.116(C)(7) because Can IV failed to identify an opinion, order, or

---

[5] Schubiner also submitted an affidavit with his response, in which he averred that at the time of the $14 million guaranty judgment, he had not fully reviewed the loan documents for the receiver loan and was not aware that the judgment of foreclosure contained language indicating that the receiver loan and development loan were both secured by first priority liens. Schubiner also stated that while he was generally aware of the total amount of the foreclosure judgment, he only recently became aware that the sheriff's sale resulted in a near complete satisfaction of the indebtedness listed in the judgment of foreclosure.

judgment that precludes his claims in the instant case. Schubiner maintained that the previous orders that Can IV relied on were inapplicable.

In reply, Can IV asserted that Schubiner failed to address its position that the availability of a remedy under MCR 2.612(C)(1) forecloses an action under MCR 2.612(C)(3). Can IV also argued that Schubiner cannot merely rely on Michigan being a notice-pleading jurisdiction to avoid pleading facts to establish the prima facie elements of his claims and that Schubiner has failed to adequately address the necessary factors to establish a prima facie case under MCR 2.612(C)(3).

On February 26, 2024, the trial court issued a written opinion and order granting Can IV's motion for summary disposition. With respect to Can IV's motion brought under MCR 2.116(C)(7), the trial court concluded that res judicata and collateral estoppel precluded Schubiner from relitigating either the priority of the receiver loan or the damages calculation. The court ruled that both the earlier circuit court opinion and order from the guaranty judgment case and this Court's decision in *Schubiner I* affirming that decision intentionally addressed the claims made by Schubiner in the instant case. The court similarly held that collateral estoppel barred Schubiner from relitigating the priority of the receiver loan. The trial court further concluded that dismissal was warranted under MCR 2.116(C)(8) because Schubiner did not and could not allege facts to support the elements necessary to establish a claim under MCR 2.612(C)(3). The court also denied Schubiner's request to file an amended complaint because such an attempt would be futile. The court noted that the only additional facts Schubiner would rely on were contained in his affidavit, but (1) Schubiner could not establish the necessary element of the absence of an adequate remedy at law and (2) Schubiner's affidavit fails to explain how any purported "mistake" was not due to his own inaction.

### Reconsideration is denied and Schubiner appeals

Schubiner, *in propria persona*, moved for reconsideration. He raised numerous arguments, but only one is pertinent on appeal. Schubiner argued that "new evidence" in the form of a February 9, 2021 deposition by the receiver, Matthew Mason, showed that, contrary to a previously filed affidavit, Mason had no personal knowledge that the value added to the real property as a result from the construction funded by the receiver loan was likely to exceed the cost of the additional construction. Schubiner averred that this new evidence demonstrates that the receiver loan should never have been made.[6] In response, Can IV argued that this evidence was not "new." Indeed, Can IV highlighted that this same argument was raised in a 2022 suit in Washtenaw Circuit Court, which was filed by Packard Square against Can IV and was dismissed via summary disposition. Can IV emphasized that a court need not consider evidence or legal theories presented in a motion for reconsideration that could have been presented the first time the issue was argued.

The trial court denied Schubiner's motion, ruling that the motion (1) failed to demonstrate palpable error by which the court and the parties were misled, (2) failed to show that a different disposition of the underlying motion must result from correction of any error, and (3) raised arguments that were or could have been raised before the court granted Can IV's motion for

---

[6] Attached to Schubiner's motion for reconsideration were 31 exhibits encompassing more than 900 pages. After receiving this motion, the trial court ordered Can IV to file a response.

summary disposition. With respect to the "new" evidence and arguments Schubiner raised in his motion, the court noted that it does not abuse its discretion by denying a motion for reconsideration that rests on legal theories or facts that could have been pleaded or argued before the trial court's original order. The court suggested, "Motions are not placeholders to allow new arguments to make the record without the opportunity of the Court and the opposing parties to consider them."

In Docket No, 377134, Schubiner appeals as of right the trial court's February 26, 2024 order that granted summary disposition in favor of Can IV on Schubiner's claim for relief from judgment pursuant to MCR 2.612(C)(3). In Docket No. 377133, Schubiner and 305 Associates, LLC (305), appeal as of right the trial court's March 14, 2025 order, which (1) found that Schubiner had engaged in a fraudulent transfer of real estate and (2) voided the transfer. These cases were consolidated following appellant's motion for the same.

## II.    ANALYSIS

### A.  DOCKET NO. 377134: SUMMARY DISPOSITION WAS PROPERLY GRANTED IN FAVOR OF CAN IV

#### 1.  ISSUE PRESERVATION AND STANDARD OF REVIEW

An issue raised for the first time in a motion for reconsideration is not preserved for appellate review. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). Because the crux of Schubiner's position on appeal is that the purported new evidence shows that summary disposition was unwarranted, and because that argument was only presented in his motion for reconsideration, the issue is not preserved.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). This Court also reviews a trial court's decision to deny amendment of pleadings for an abuse of discretion. *Horn v Dep't of Corrections*, 216 Mich App 58, 65; 548 NW2d 660 (1996). "A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021).

#### 2.  SCHUBINER'S CLAIM FOR INDEPENDENT RELIEF UNDER 2.612(C)(3) WAS WAIVED

This argument Schubiner raises on appeal was not raised at the time the trial court ruled on Can IV's motion for summary disposition. Instead, it was only raised in his motion for reconsideration, which is insufficient to preserve the issue for appellate review. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (quotation marks and citation omitted).

-10-

Schubiner does not address why this Court should exercise its discretion to review the unpreserved issue. Indeed, he does not even acknowledge that the arguments he raises on appeal were not raised at the time the motion for summary disposition was decided. We further note that in support of his arguments that the court erred, Schubiner relies on arguments not presented to the trial court at the time the motion was decided and relies on evidence that was not before the court. We decline to engage with this issue further other than to say there is no basis to reverse the trial court's decision.

### 3. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED SCHUBINER'S MOTION FOR RECONSIDERATION

Schubiner asserts that the trial court should have considered his arguments related to newly discovered evidence that he acknowledged were being raised for the first time in the motion for reconsideration. Because "a motion for reconsideration is a vehicle to identify a palpable error in the *prior ruling* . . . . a court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017) (quotation marks and citations omitted); see also *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). Accordingly, the trial court did not make an unprincipled decision to deny Schubiner's motion for reconsideration, which was based on new evidence, when there was no reason why Mason's testimony could not have been cited and relied on when responding to Can IV's initial motion for summary disposition.[7]

Schubiner also asserts that the trial court erred by not allowing him to file an amended complaint. "A trial court should freely grant leave to amend a complaint when justice so requires." *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013), citing MCR 2.118(A)(2). However, a motion to amend may be denied for many reasons, including that the amendment would be futile. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014). An amendment is futile if, among other things, it is legally insufficient on its face. *PT Today, Inc v Comm'r of Office of Fin & Ins Serv*, 270 Mich App 110, 143; 715 NW2d 398 (2006).

The trial court denied Schubiner's request to amend his complaint because it determined that amendment would be futile when there is no dispute that the guaranty judgment had been appealed though the Supreme Court. On appeal, Schubiner argues that this was erroneous because the issue of new evidence was not part of that appeal process. But Schubiner fails to acknowledge that he did not raise this argument when he moved to amend his pleadings. In addition to being waived, see *Tolas Oil*, 347 Mich App at 293-294, the trial court did not abuse its discretion by not considering arguments and evidence that were not before it, see *Yachcik*, 319 Mich App at 42.

---

[7] Schubiner also relies on new evidence from the testimony that were not part of Schubiner's motion for reconsideration. Schubiner moved in this Court to expand the record to include, among other things, these transcripts, but this Court denied the motion without prejudice, allowing him to refile the motion again with the ultimate case call panel. *Schubiner v Can IV Packard Square LLC*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371134). That motion was renewed in advance of oral argument and again denied.

The trial court also noted that the affidavit that Schubiner provided when opposing Can IV's motion for summary disposition did not show that amendment was warranted. In that affidavit, there was no mention of newly discovered evidence. Schubiner instead averred that while he was generally aware of the total amount of the foreclosure judgment, he was not aware that a sheriff's sale resulted in a near-complete satisfaction of the indebtedness listed in that judgment and that he has since became aware of these facts. Schubiner did not explain how that mistake was not due to his own negligence.[8] Given the evidence and arguments before the court, the court did not abuse its discretion.

This Court further notes that the trial court was forced to deduce what Schubiner's amended complaint would look like. "If a plaintiff does not present its proposed amended complaint to the court, there is no way to determine whether an amendment is justified." *Anton, Sowerby & Assoc, Inc v Mr. C's Lake Orion, LLC*, 309 Mich App 535, 551; 872 NW2d 699 (2015). This is an additional ground for affirming the trial court's decision. See *id*.

B. DOCKET NO. 377133

1. ISSUE PRESERVATION AND STANDARD OF REVIEW

Schubiner and 305 preserved the issue by arguing in the trial court that Schubiner held the debt both before and after the refinancing. Moreover, no exception need be taken to a trial court's factual finding. MCR 2.517(A)(7).

This Court reviews a trial court's decision in a postjudgment collection action for an abuse of discretion. See *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013) (applying an abuse-of-discretion standard to a trial court's decision whether to quash a writ of garnishment). "A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Wolfenbarger*, 336 Mich App at 14. To the extent the issue requires review of the proper interpretation of statutes, this Court's review is de novo. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017). This Court likewise reviews the proper interpretation and application of court rules de novo. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023). A trial court's factual findings are reviewed for clear error, and its application of the law to the facts are reviewed de novo. *Hannay v Dep't of Transp*, 497 Mich 45, 57-58; 860 NW2d 67 (2014). Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake occurred. *Massey v Mandell*, 462 Mich 375, 379; 614 NW2d 70 (2000).

2. THE TRIAL COURT DID NOT ERR WHEN IT DETERMINED SCHUBINER MADE A FRAUDULENT TRANSFER OF PROPERTIES

This Court in *Schubiner II*, unpub op at 6-7, summarized the pertinent law:

---

[8] This is fatal to the fourth element under *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 589; 644 NW2d 54 (2002).

Under Michigan law, a party to a civil action is permitted to pursue post-judgment supplementary proceedings to collect a money judgment. MCL 600.6101 *et seq*.; MCR 2.621(A)(2). In this case, [Can IV] moved for post-judgment supplementary proceedings seeking to set aside [Schubiner's] conveyances of property to intervening defendant 305 under Michigan's Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq*. The UVTA was "designed to prevent debtors from transferring their property in bad faith before creditors can reach it." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014).

The UVTA provides for a creditor to recover with regard to two types of fraudulent transfers, the first occurring when the debtor actually intended to defraud a creditor and the second occurring when the debtor engages in certain transactions that are deemed fraudulent regardless of whether the creditor can prove the debtor's actual intent. . . .

The second type of fraudulent transfer, commonly called "constructive fraud" or "fraud in law," is addressed in §5 of the UVTA, MCL 566.35, which provides in relevant part:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

* * *

> (3) Except as provided in subsection (4) and subject to [MCL 566.32] a creditor that makes a claim for relief under subsection (1) or (2) has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

MCL 566.35 thus pertains to "constructive fraud" because it "deems certain transactions fraudulent regardless of the creditor's ability to prove the debtor's actual intent." *Dillard*, 308 Mich App at 446. A creditor seeking relief under MCL 566.35 must prove that (1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive reasonably equivalent value in exchange for the transfer. [Can IV] thus was required in this case to prove the three elements by a preponderance of the evidence to demonstrate that defendant's property transfers to 305, or obligations incurred as a result of the transfers, were voidable under MCL 566.35. *Dillard*, 308 Mich App at 446-447.

Recall that initially, before this Court's remand in *Schubiner II*, the trial court found that the second and third elements were not satisfied and denied Can IV's motion for supplemental

proceedings. Regarding the second element, the court found that Can IV failed to show that Schubiner was or became insolvent because of the transfer. For the third element, the trial court found that Schubiner received reasonably equivalent value in exchange for the transfer. The court noted that Schubiner paid $1 to get title before the refinancing and received $1 after the refinancing to transfer title back, "an exactly equivalent value."

On appeal, the *Schubiner II* Court found these findings to be clearly erroneous and inconsistent with the court's other findings, which included the following: (1) at the time of the guaranty judgment, 305 owned the debt in excess of $1.5 million secured by the mortgages on the properties, (2) Schubiner, not 305, incurred a debt of $1.5 million as a result of the refinancing, and (3) after the refinancing, Schubiner transferred the property back to 305 while retaining the new debt from the refinancing. *Schubiner II*, unpub op at 10-11. This Court concluded that the trial court erred by failing to ascertain and consider [Schubiner's] debts when determining whether [he] was insolvent."[9] *Id*. at 11.

On remand, the trial court kept some of its prior findings and made new findings pursuant to the direction from this Court:

> (1) [Schubiner] was insolvent at the time of the transfer under the UVTA. This is so because [his] liabilities grossly exceeded his net worth because of owed $600,000 to creditors at the time of the transfers, [Schubiner's] debt increased by $1.5 million following the transfers, and [Can IV's] $14 million judgment against [Schubiner], which constitutes a debt under the MUVTA.

> (2) The refinancing affected [Schubiner's] net worth in light of $1.5 million in debt being shifted from 305 to [him].

> (3) [Schubiner] did not receive "reasonably equivalent value in exchange for the transfer" because the obligation to pay $1.5 million shifted from 305 to [Schubiner] with [Schubiner] receiving no equivalent value in exchange for [him] acquiring this obligation because he took on debt and received nothing in return.

At the outset, Schubiner and 305 have waived any challenge to the trial court's determination regarding the second finding. The court found that Schubiner was insolvent at the time of the transfer because his debts, *which included the $14 million judgment*, "grossly exceeded his net worth."[10] On appeal, Schubiner and 305 do not challenge the trial court's determination that the $14 million judgment against Schubiner qualifies as "debt" under the UVTA. Thus, regardless of whether Schubiner owned any of the $1.5 million debt related to the mortgages before the refinancing is irrelevant; the $14 million debt on the judgment wipes out his net worth in any event, rendering him insolvent under the UVTA. See also *Derderian v Genesys Health Care Sys*,

---

[9] This Court also noted that the trial court failed to address the impact of the $14 million judgment against Schubiner and how that judgment affected his debt. *Schubiner II*, unpub op at 11.

[10] The court previously found that Schubiner's net worth was around $4.5 million before the entry of the judgment. *Schubiner II*, unpub op at 9.

263 Mich App 364, 381; 689 NW2d 145 (2004) (stating that when an appellant fails to challenge the basis for a trial court's ruling, this Court need not consider granting the relief sought).

Regarding the third new finding, Schubiner and 305 challenge the trial court's determination that Schubiner did not receive reasonably equivalent value in exchange for the transfer because the debt "shifted" from 305 to Schubiner with Schubiner receiving nothing in return for taking on this new debt. Schubiner and 305 argue that this finding is erroneous because the record evidence shows that Schubiner possessed that debt both before and after the refinancing. Initially, to the extent Schubiner and 305 rely on materials outside of what was presented to the trial court, including the purported promissory notes from the antecedent mortgages, those materials are not a proper consideration in this appeal.[11]

Schubiner and 305 claim that the following evidence that was presented to the trial court demonstrates that the trial court clearly erred: an accommodation rider to the 2014 BOFI Federal Bank mortgage, the 2018 Nations Home Loan mortgage, and Schubiner's testimony at the evidentiary hearing. They assert that this evidence shows that Schubiner owned the debt before the refinancing, which would necessarily negate any finding of the debt having been "shifted."

The accommodation rider to the 2014 mortgage states the following:

ACCOMMODATION: The Security Instrument secures a Promissory Note executed by: __CRAIG E. SCHUBINER__ collectively, ("Borrower") in favor of the Lender there under. Mortgagor is executing this Accommodation Rider as an accommodation to Borrower and thereafter agrees as follows . . . .

The rider then describes how the mortgagor, 305, waived any right to require the lender to proceed against the borrower, Schubiner, and that 305 assumed the responsibility for being and keeping informed of the financial condition of Schubiner. This documentation certainly is evidence that Schubiner was the borrower and incurred the debt related to the note associated with the BOFI mortgage.

Schubiner and 305 also assert that the 2018 mortgage for Nations Home Loan similarly identifies Schubiner as the mortgagor and refers to the note he signed. However, they do not cite where in the lengthy document these references can be found.[12] In any event, this Court presumes that Schubiner and 305 are relying on the opening paragraph of the mortgage, which provides:

---

[11] Relatedly, to the extent Schubiner and 305 argue on appeal that the trial court was required to accept new evidence or hold a new evidentiary hearing after this Court's remand in *Schubiner II*, that argument is waived. The parties on remand explicitly agreed that no new evidence was needed and waived any request for an evidentiary hearing. See *Braverman v Granger*, 303 Mich App 587, 608; 844 NW2d 485 (2014) (stating that "waiver is a voluntary and intentional abandonment of a known right" and that "[a] party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal.") (quotation marks and citations omitted).

[12] The mortgage document is 18 pages in length, has 28 numbered paragraphs, and is fairly densely comprised, with the document being single-spaced.

THIS MORTGAGE made as of the 13TH day of March, 2018, by CRAIG E. SCHUBINER, an unmarried man, and 305 ASSOCIATES LLC, a Delaware limited liability company, whose address is c/o Craig Schubiner 200 Aspen, Birmingham Michigan 48009 (the "Mortgagor"), unto NATIONS HOME LOAN CORPORATION, a Michigan corporation, whose address is 4540 Echo Road, Bloomfield Hills Michigan 48302 (the "Mortgagee").

And, elsewhere, this Court found a reference in the mortgage document to a "Promissory Note . . . given by Mortgagor to Mortgagee of even date herewith in the principal amount of Four Hundred Thousand and 00/100 Dollars ($400,000.00) . . . ." This document arguably lends support for finding that Schubiner and 305 were co-borrowers on the 2018 loan. But because of the boiler-plate language in the document, it carries much less weight than the more specific BOFI document.

Finally, Schubiner and 305 rely on Schubiner's testimony in which he purportedly stated that he was responsible for the prior loans and that the refinancing "actually improved [his] position" by decreasing his debt. Schubiner's full testimony, however, is as follows:

> *Q.* So at the end of the day after that transaction, you personally owed the lender $1.5 million dollars and 305 Associates enjoyed the benefit of you paying off the liens on those properties. Isn't that right?
>
> *A.* Well yes, but I was also responsible for the prior loans as a guarantor, so my -- it actually improved my position and 305's position because the interest was less.
>
> *Q.* Okay. . . . You would owe the prior amounts on this property, as well? The prior amounts that were encumbranced --
>
> *A.* I was a guarantor on that debt.
>
> *Q.* Okay. And at least in this situation, you're the primary obligor. You signed the promissory note?
>
> *A.* Correct. I was -- it was -- I was comfortable with the risk, given the loan to value and that I was guarantor previously, and actually it lowered the cost. So I viewed it as a lowering of risk.

The testimony makes it clear that he viewed the nature of his pre- and post-refinancing obligations differently. Schubiner and 305 attempt to minimize Schubiner's characterization of being a "guarantor" by claiming that this characterization simply reflected his layman's understanding that, while he signed the promissory notes, the debts were fully secured by 305's properties, meaning that he would only have to pay if the value of the real estate was insufficient to satisfy the debt. We instead rely on the plain language of the exchange in the transcript: Schubiner was asserting that he was only a guarantor in the prior loans and not a primary obligor.

In their reply brief, Schubiner and 305 argue that even if Schubiner was considered a mere "guarantor" under the earlier loan, that obligation, although contingent, still qualifies as "debt" under the UVTA. See MCL 566.31(e) (defining "debt" as "liability on a claim") and MCL

566.31(c) (defining "claim" as "a right to payment, whether or not the right is . . . contingent"). Schubiner and 305 therefore assert that even if his debt was contingent because of his guarantor status, it still qualifies as debt under the UVTA. While this argument may be appropriate for an analysis related to the second finding, it is largely irrelevant for the analysis related to the third element. The focus on the third finding is whether the debtor did not receive reasonably equivalent value in exchange for the transfer. *Dillard*, 308 Mich App at 446. Under the UFTA, "[v]alue is given for a transfer . . . if, in exchange of the transfer . . . , property is transferred or an antecedent debt is secured or satisfied." MCL 566.33(1).

Before the refinancing, 305 was the primary obligor and Schubiner was the guarantor. But afterward, 305's obligation was erased, with Schubiner becoming the primary (and only) obligor. Accepting that Schubiner's debt was the same both before and after the refinancing, that does not fully describe the situation: 305 got its debt erased. Thus, the question becomes, "In the context of this particular transaction, did 305 give Schubiner anything for the removal of 305's debt?" The answer would appear to be "no." Schubiner's debt related to these loans remained virtually unchanged after the refinancing. It therefore is highly questionable that he received any "value" for becoming the sole obligor on the loans, with 305 getting its debt eliminated.

Accepting Schubiner and 305's position that Schubiner had the same debt (related to the loans) before and after the refinancing,[13] the evidence shows that Schubiner received nothing for 305 being able to eliminate its debt on the loans, with him now taking on the full liability for the loan debts. Accordingly, this Court is not left with a definite and firm conviction that the trial court erred with respect to this third finding.

---

[13] This Court acknowledges that the trial court's finding related to whether the debt "shifted" from 305 to Schubiner lacks the same support as the other findings discussed above. But, the "shifting" finding is irrelevant for deciding whether Schubiner received reasonably adequate value for the transfer. The trial court's "shifting" finding was premised on before the refinancing, 305 having all of the debt and Schubiner having none of the debt, with those positions swapping after the refinancing. Schubiner and 305 make persuasive arguments related to this "shifting" debt by identifying evidence that shows that Schubiner had that debt both before and after the refinancing, which would essentially negate any finding of the debt "shifting." Even so, Schubiner, who was in the best position to know his status as a borrower on the prior loans, was very specific in his testimony that he was only a guarantor. And his explanation for why he called himself a "guarantor" makes little sense, when that same definition would have applied to his status post-refinancing. Accordingly, these observations do not rise to the level of having a definite and firm conviction that a mistake was made.

-17-

## 3. THE TRIAL COURT DID NOT ERR WHEN IT DENIED SCHUBINER'S MOTION FOR ENFORCEMENT OF MCR 2.621(G).[14]

In the trial court, Schubiner argued that pursuant to MCR 2.621(G), Can IV was required to seek leave of the trial court before it could pursue other enforcement actions in other jurisdictions. To be clear, and as stated above in the facts section, Can IV pursued litigation in other states, not other Michigan jurisdictions. The trial court denied the motion, ruling that the provision in question "is self-evidently a Rule of Court for supplemental proceedings initiated in Michigan, not sister states."

MCR 2.621 provides, in pertinent part:

(A) **Relief Under These Rules.** When a party to a civil action obtains a money judgment, that party may, by motion in that action or by a separate civil action:

(1) obtain the relief formerly obtainable by a creditor's bill;

(2) obtain relief supplementary to judgment under MCL 600.6101-600.6143 and

(3) obtain other relief in aid of execution authorized by statute or court rule.

\* \* \*

(G) **New Proceeding.** If there has been a prior supplementary proceeding with respect to the same judgment against the party, whether the judgment debtor or another person, further proceedings may be commenced against that party only by leave of court. . . .

At issue is the proper interpretation of the phrase "further proceedings" in subrule (G). This appears to be a matter of first impression. Schubiner avers that because the subrule contains no express geographical limitation, "further proceedings" should be read according to its plain language, which does not contain any such limitation. When interpreting a rule, "this Court must read its language in the context of the entire rule in order to produce [a] harmonious whole." *Colista v Thomas*, 241 Mich App 529, 536; 616 NW2d 249 (2000). In this instance, "further" is being used as an adjective, which means "additional." *Merriam-Webster's Collegiate Dictionary* (11th ed). Consequently, with "further proceedings" clearly relating to the "prior supplementary proceeding" that is mentioned earlier in the same sentence, "further proceedings" is best understood as "additional supplementary proceedings."

---

[14] Although this argument is contained in Schubiner and 305's joint brief on appeal, because only Schubiner raised this issue in the trial court and because the issue only pertains to him, this Court treats the issue as Schubiner's only.

Significantly, subrule (G) is contained in MCR 2.621, which addresses proceedings supplementary to judgment, in which subrule (A) describes the specific types of proceedings it governs. Accordingly, when read in context, see *In re Huntington Estate*, 339 Mich App 8,17; 981 NW 2d 72 (2021), the "additional" or "further" supplementary proceedings referenced in subrule (G) are additional supplemental proceedings brought under MCR 2.621(A). In other words, MCR 2.621(G) does not permit a party to bring multiple supplementary proceedings under MCR 2.621(A) without obtaining leave of the court. It does not pertain to other types of supplemental proceedings, including those initiated in other jurisdictions. The trial court therefore did not err in its analysis and did not err by denying Schubiner's motion for enforcement of MCR 2.621(G), when the subject proceedings were brought in other jurisdictions and were not brought under MCR 2.621(A).

Because a proper interpretation of MCR 2.621(G) shows that it does not apply to supplemental proceedings brought in other jurisdictions, there is no reason to address the constitutionality such an application.[15] *Mantei v Mich Pub Sch Employees Retirement Sys*, 256 Mich App 64, 87; 663 NW2d 486 (2003) ("Appellate courts should avoid deciding constitutional issues where the case may be decided on other grounds.").

### III. CONCLUSION

In Docket No. 371134, we affirm the trial court's grant of summary disposition in favor of Can IV on Schubiner's claim for relief from judgment pursuant to MCR 2.612(C)(3). In Docket No. 377133, we affirm the trial court's March 14, 2025 order, which (1) found that Schubiner had engaged in a fraudulent transfer of real estate and (2) voided the transfer. In both docket numbers, we affirm. Can-IV being the prevailing party in both docket numbers may tax costs pursuant to MCR 7.219.

/s/ Adrienne N. Young
/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan

---

[15] Also, the trial court did not make a ruling on the rule's constitutionality had it prevented a party from pursing supplementary proceedings in other jurisdictions. Instead, it merely suggested, without deciding, that if such a restriction existed, its constitutionality would be "dubious."